UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ALEXANDER G. BALDWIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 08-431-P-H |
| | ) | |
| JOHN W. BADER, et al., | ) | |
| | ) | |
| Defendants | ) | |

### *RECOMMENDED DECISION ON MOTION TO DISMISS*

Defendants John W. Bader, Steven P. Boulet, Michael L. Brousseau, Scott F. Hall, Roger H. Poulin, John A. Powell (collectively, "Individual Defendants"), and WahlcoMetroflex, Inc. ("WMI") move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss plaintiff Alexander G. Baldwin's two-count complaint against them for lack of subject-matter jurisdiction. *See* Motion To Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) ("Motion") (Docket No. 15) at 1-2. For the reasons that follow, I recommend that the motion be granted.

### I. Applicable Legal Standards

When a defendant moves to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of demonstrating that the court has jurisdiction. *Aversa v. United States,* 99 F.3d 1200, 1209 (1st Cir. 1996). The moving party may use affidavits and other matter to support the motion, while the plaintiff may establish the existence of subject-matter jurisdiction through extra-pleading material. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 159-60 (3d ed. 2004); *see also Aversa*, 99 F.3d at 1210; *Hawes v. Club*

*Ecuestre el Comandante*, 598 F.2d 698, 699 (1st Cir. 1979) (question of jurisdiction decided on basis of answers to interrogatories, deposition statements, and an affidavit).

## II.  Factual Background

Baldwin is one of the founders and seven holders of the common stock of WMI, a Delaware corporation doing business in Lewiston, Maine.  *See* Verified Complaint and Demand for Jury Trial ("Complaint") (Docket No. 1) ¶¶ 1-8, 11-12.  Since April 2004, the Individual Defendants were the sole members of the board of directors of WMI.  *See id*. ¶¶ 24-25.  Baldwin and the Individual Defendants together represent the entirety of WMI's shareholders.  *See id*. ¶ 23.

From its inception, WMI was in the business of designing, manufacturing, installing, and servicing a broad range of high-performance isolation and flow control dampers, expansion joints, related duct systems, and other industrial systems.  *See id*. ¶ 13.  In January 2001, Baldwin was appointed to serve as WMI's president and chief executive officer and as a member of its board of directors.  *See id*. ¶ 19.  He resigned his positions as a WMI officer and director in April 2004.  *See id*. ¶ 24.

On March 9, 2005, the Individual Defendants, in their capacities as WMI's directors, approved a formula ("Guaranty Shares Formula") pursuant to which any shareholder who provided future lenders with personal guarantees to obtain financing for the company would receive a *pro rata* distribution of newly issued shares of WMI stock.  *See id*. ¶ 28.  Specifically, the Guaranty Shares Formula provided that any shareholder who provided a personal guaranty to future lenders would receive, for each $100,000 of additional personal guarantees, WMI shares equaling approximately five percent of the outstanding equity of WMI on a fully-diluted basis (rounded up to prevent issuing partial shares).  *See id*. ¶ 29.

Prior to January 1, 2006, Baldwin and the Individual Defendants each owned equal fractions (approximately 14.3 percent) of WMI's issued and outstanding shares. *See id*. ¶¶ 15, 17, 39. On January 1, 2006 and again in late 2006, the Individual Defendants, in their capacities as WMI's directors, voted to issue themselves additional shares of stock in WMI in consideration for guarantees each had provided with respect to prior secured financings from Androscoggin Savings Bank. *See id*. ¶¶ 38-40, 42-47. This action diluted Baldwin's ownership of WMI. *See id*. ¶¶ 40, 47.

On March 23, 2007, Baldwin filed a complaint in this court alleging that the Individual Defendants, as directors of WMI, had breached their fiduciary duties of care and loyalty in causing WMI to issue both the January 2006 guaranty shares ("Initial Guaranty Shares") and late 2006 guaranty shares ("Additional Guaranty Shares"). *See id*. ¶ 48; *see also* Complaint and Demand for Jury Trial (Docket No. 1), *Alexander G. Baldwin v. John W. Bader, et al*., Civil No. 07-46-P-H (D. Me.) ("*Baldwin I*").

On April 11, 2007, Baldwin, through his counsel, wrote to counsel for the Individual Defendants demanding assurances that WMI would not provide an indemnity in favor of the Individual Defendants with respect to *Baldwin I* or permit corporate funds to be used to pay for the defense of *Baldwin I* or to satisfy any judgment therein. *See* Complaint ¶ 49 & Exh. B thereto.

On April 18, 2007, Wayne E. Tumlin, counsel for WMI, responded and rejected Baldwin's demand as set forth in the April 11, 2007, letter. *See* Complaint ¶ 50 & Exh. C thereto. He stated, *inter alia*, that, at a WMI shareholders' meeting held the prior week, those shareholders in attendance had determined that indemnification of WMI's directors and

3

advancement of defense costs was appropriate in the circumstances. *See* Exh. C to Complaint at 2. He added:

> Regardless, the shareholders have also determined that, solely to appease Mr. Baldwin, the Company will retain independent counsel (other than Bernstein Shur) to determine if indemnification is proper under the circumstances and whether the Directors have satisfied the applicable standard of conduct. Additionally, each Director has voluntarily agreed not to use the Company's funds for his respective defense costs until the earlier of (i) issuance of the legal opinion, (ii) an undertaking is made by such Director under Section 145(e) [Del. Code Ann. tit. 8, § 145(e)], or (iii) such Director is successful in his defense of Mr. Baldwin's claims.

*Id*.

On May 7, 2007, prior to WMI's advancement of any funds to cover the Individual Defendants' legal expenses associated with *Baldwin I*, each Individual Defendant voluntarily provided WMI with a signed, written undertaking to repay any litigation advances in the event that it was ultimately determined that he was not entitled to indemnification. *See* Affidavit of John Bader in Support of Defendants' Motion To Dismiss ("Bader Aff."), attached to Motion, ¶¶ 4-5 & Exh. 1 thereto; Affidavit of Steven Boulet in Support of Defendants' Motion To Dismiss ("Boulet Aff."), attached to Motion, ¶¶ 4-5 & Exh. 1 thereto; Affidavit of Michael Brousseau in Support of Defendants' Motion To Dismiss ("Brousseau Aff."), attached to Motion, ¶¶ 4-5 & Exh. 1 thereto; Affidavit of Scott Hall in Support of Defendants' Motion To Dismiss ("Hall Aff."), attached to Motion, ¶¶ 4-5 & Exh. 1 thereto; Affidavit of Roger Poulin in Support of Defendants' Motion To Dismiss ("Poulin Aff."), attached to Motion, ¶¶ 4-5 & Exh. 1 thereto; Affidavit of John Powell in Support of Defendants' Motion To Dismiss ("Powell Aff."), attached to Motion, ¶¶ 4-5 & Exh. 1 thereto. The undertakings provide:

> The undersigned is a member of the Board of Directors of [WMI], a Delaware corporation. Pursuant to Del. Code. Ann. tit. 8, § 145(e) (2006), the undersigned hereby agrees to repay any expenses paid by [WMI] in advance of the final disposition of [*Baldwin I*], including any attorney's fees, incurred on my behalf in

> defending such action, if it is ultimately determined that I am not entitled to be indemnified by [WMI] as authorized in Del. Code Ann. tit. 8, § 145 (2006).

Exh. 1 to Bader Aff.; Exh. 1 to Boulet Aff.; Exh. 1 to Brousseau Aff.; Exh. 1 to Hall Aff.; Exh. 1 to Poulin Aff.; Exh. 1 to Powell Aff.[1]

On October 31, 2008, Baldwin, through counsel, demanded in writing that WMI permit him to inspect various corporate records pursuant to section 220 of the Delaware General Corporation Law ("Section 220"). *See* Complaint ¶ 54 & Exh. D thereto. These records included all books and records pertaining to payments made by WMI to or for the benefit of any WMI director with respect to legal fees, expert witness fees, and other costs and expenses associated with *Baldwin I*. *See* Exh. D to Complaint at 2, ¶ 3.

The stated purpose of the demand was to enable Baldwin "to investigate the value of the Company and the value of his Stock, and to investigate whether and to what extent payments and/or distributions made by the Company to its directors affect that value." Exh. D to Complaint at 2. Baldwin explained that, as part of that investigation, he wished to inquire into whether any of WMI's directors had breached their fiduciary duties to the company and its shareholders in connection with payments or distributions made to, or for the benefit of, directors with respect to *Baldwin I*. *See id*. He added that an additional purpose of his demand was to determine whether WMI's directors had insurance coverage with respect to any claim that might be made against them. *See id*.

By letter dated November 13, 2008, WMI's counsel objected on several grounds to the inspection requests. *See* Complaint ¶ 55 & Exh. E thereto. With respect to the specific request to inspect books and records concerning payments to or for the benefit of WMI directors

---

[1] The copy provided to the court of Boulet's undertaking omits the first line of the paragraph. *See* Exh. 1 to Boulet Aff. I take this to be a typographical error. In any event, the omitted portion merely describes Boulet's status as a director of WMI. *Compare, e.g*., Exh. 1 to Bader Aff. *with* Exh. 1 to Boulet Aff.

5

pertaining to defense of *Baldwin I,* WMI's counsel objected that the request "exceeds the scope of what is necessary and essential for Mr. Baldwin to determine the value of his shares, is irrelevant to the stated purpose of determining the extent of insurance available to Wahlco's directors, and improperly seeks to use Section 220 as a discovery tool." Exh. E to Complaint at 3. WMI's counsel added that Baldwin had failed to present a credible basis from which it could be inferred that waste or mismanagement might have occurred, and that Baldwin already possessed documents from which he could determine the propriety of WMI's advancement of attorney fees to the Individual Defendants as well as the value of his shares. *See id.*

On November 21, 2008, the court entered final judgment in *Baldwin I*. *See* Complaint ¶ 52; *see also* Final Judgment (Docket No. 103), *Baldwin I*. Final judgment was entered in favor of Baldwin and against the Individual Defendants in the amount of $70,413.93, based on the court's earlier ruling on summary judgment that the Individual Defendants had breached their fiduciary duties to Baldwin with respect to the Additional Guaranty Shares and the parties' stipulation as to the damages arising therefrom. *See id.* The court granted judgment in favor of the Individual Defendants with respect to the issuance of the Initial Guaranty Shares. *See id.*

On December 18, 2008, Baldwin filed a notice of appeal to the First Circuit of the grant of summary judgment in the Individual Defendants' favor with respect to the Initial Guaranty Shares. *See* Notice of Appeal (Docket No. 107), *Baldwin I*. On December 22, 2008, the Individual Defendants filed a notice of appeal to the First Circuit of the grant of summary judgment in Baldwin's favor with respect to their liability regarding issuance of the Additional Guaranty Shares. *See* Notice of Appeal (Docket No. 110), *Baldwin I*. As of February 27, 2009, those cross-appeals remained pending before the First Circuit. *See* Affidavit of Theodore Small in Support of Defendants' Motion To Dismiss, attached to Motion To Dismiss, ¶ 11.

Prior to entry of this court's final judgment in *Baldwin I*, the Individual Defendants caused WMI to make payments and disbursements to or for their account in order to fund the cost of attorneys, expert witnesses, and other costs of their defense of *Baldwin I*. *See* Complaint ¶ 58. Upon information and belief, those legal costs are substantial and are likely to exceed $100,000, if they have not already. *See id*.

During the course of *Baldwin I*, Baldwin, through proper discovery requests under the Federal Rules of Civil Procedure, requested a copy of the legal opinion to which Tumlin referred in his letter of April 18, 2007, allegedly obtained by WMI and the Individual Defendants. *See id*. ¶ 51. WMI and the Individual Defendants refused to produce the letter on the ground of attorney-client privilege, thereby concealing its contents from Baldwin, if in fact it existed. *See id*.

In Count I of the instant complaint, Baldwin alleges that his October 31, 2008, demand to inspect and copy books and records was made for a proper purpose, that WMI's rejection of it was unlawful, and that the action of the Individual Defendants in causing WMI to reject that request constituted a concealment by the Individual Defendants of their withdrawals of funds from WMI and a breach of their fiduciary duties to WMI and to Baldwin. *See* Complaint ¶ 56.

In Count II, Baldwin alleges that under applicable law, and by virtue of the entry of final judgment in *Baldwin I* in his favor, including the finding that the Individual Defendants breached their fiduciary duties to Baldwin with respect to issuance of the Additional Guaranty Shares, the Individual Defendants are not entitled to be indemnified by WMI as to legal costs incurred with respect to issuance of the Additional Guaranty Shares, nor to retain payments made or advanced by WMI to or for their benefit with respect to such legal costs. *See id*. ¶ 59.

Baldwin adds that, as the entirety of the board of directors, the Individual Defendants caused WMI to disburse the legal costs to themselves and caused WMI to refuse Baldwin's lawful and proper demand to inspect and copy books, records, and documents pertaining thereto, thereby attempting to conceal such payments. *See id.* ¶ 60. He alleges that, upon information and belief, the legal costs are substantial and material with respect to the financial circumstances of each Individual Defendant. *See id.* ¶ 61. He asserts that, by the foregoing actions, the Individual Defendants have breached their fiduciary duties to him and to WMI. *See id.* ¶ 62.

In his prayer for relief, Baldwin seeks damages according to proof, his costs of suit, attorney fees, entry of an order granting an injunction against the disbursement of further legal costs, and such other and further relief as the court deems appropriate. *See id.* at 13.

### III. Discussion

The defendants move to dismiss the instant complaint on grounds that (i) Count II is not ripe in view of the pendency of the parties' cross-appeal to the First Circuit, and (ii) Count I, standing alone, does not meet the monetary threshold for diversity jurisdiction. *See* Motion at 8-18.

Baldwin rejoins that (i) the ripeness doctrine on which the defendants rely is inapposite, fatally undercutting the basic premise of their motion, (ii) even assuming *arguendo* that the doctrine applies, the issues that Baldwin raises, "when properly understood," are ripe for adjudication, and (iii) even assuming *arguendo* that Count II must be dismissed, its dismissal would not deprive the court of jurisdiction over Count I. *See* Opposition to Defendants' Motion To Dismiss ("Opposition") (Docket No. 20) at 1. With respect to his second point, Baldwin argues that his complaint focuses not on the Individual Defendants' right to indemnification, but

rather on their entitlement to the current and ongoing advancement of legal expenses. *See id*. at 9-10.

The defendants counter that (i) the argument that the ripeness doctrine does not apply in cases that do not involve challenges to administrative actions is baseless, (ii) any claim for alleged improper indemnification is not ripe, (iii) the complaint contains no factual allegations supporting a claim for improper advancement of defense costs, (iv) Baldwin has no good-faith basis to allege facts supporting a cognizable claim of improper advancement of defense costs, and (v) once Count II is dismissed, Count I also must be dismissed. *See* Defendants' Reply in Support of Their Motion To Dismiss ("Reply") (Docket No. 25) at 1-2 & n.1.

### A. Applicability of Ripeness Doctrine

The defendants invoke the ripeness doctrine set forth in *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), *abrogated in part on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), *see* Motion at 8, in which the Supreme Court held:

> The injunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution. Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

*Abbott Labs*, 387 U.S. at 148-49 (footnote omitted).

Partly on the strength of the above quotation, Baldwin argues that "the judicial ripeness doctrine applies to only a certain class of lawsuits, those that arise from or implicate governmental or administrative action and policies, and seek injunctive or declaratory judgment

relief." *See* Opposition at 2. Yet the Court in *Abbott Labs* did not suggest that ripeness as a doctrine is inapposite to private contractual disputes.

Baldwin also cites, *inter alia*, *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 670-72 (9th Cir. 2005), in support of the point that the ripeness doctrine does not extend to private contractual disputes. *See id*. at 3. Yet, in *Robinson*, the United States Court of Appeals for the Ninth Circuit did not hold the ripeness doctrine inapplicable to private disputes. To the contrary, the court held that, while application of the *standard* enunciated in *Abbott Labs* to private contract disputes is inappropriate, "the appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard, namely, whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Robinson*, 394 F.3d at 671 (citation and internal quotation marks omitted).[2]

This court, among others, has scrutinized whether private disputes are sufficiently ripe to be justiciable. *See, e.g., BrowserCam, Inc. v. Gomez, Inc.*, No. C 08-02959 WHA, 2008 WL 4408053, at *6-*8 (N.D. Cal. Sept. 26, 2008) (analyzing whether dispute over purchase agreement ripe); *Sweetser v. Netsmart Techs., Inc.*, 558 F. Supp.2d 108, 112-14 (D. Me. 2008) (analyzing whether breach of contract action ripe); *Sun-Times Media Group, Inc. v. Black*, 954 A.2d 380, 397 (Del. Ch. 2008) (ruling that a claim regarding corporate directors' entitlement to indemnification "only becomes ripe once the underlying proceeding is truly final"). Thus, to the

---

[2] The *Robinson* court observed: "It is true that Principal does not point to, and we have not found, a case limiting the application of the *Abbott Labs* and *Western Oil* [*& Gas Ass'n v. Sonoma County*, 905 F.2d 1287 (9th Cir. 1990),] standards to the administrative context. But it is equally true that the Robinsons do not point to, and we have not found, a case applying the standard outside this context. We must decide therefore whether to extend the standard to cases in which a private party to a contract seeks a declaratory judgment on a contract." *Robinson*, 394 F.3d at 670. My research indicates that no court outside of the Ninth Circuit has considered whether to adopt *Robinson*'s holding that the *Abbott Labs* standard is inapplicable to private party contract disputes.

10

extent that Baldwin suggests that private contractual disputes are insulated from ripeness review, *see, e.g.*, Opposition at 2-4, he is mistaken.

A separate question remains whether application of the *Abbott Labs* standard is appropriate in the context of a private dispute. However, the court need not resolve it. Baldwin does not contest that, assuming *arguendo* that the ripeness doctrine applies, any claim regarding the Individual Defendants' entitlement to *indemnification* is unripe. *See id.* at 9-19. In fact, he goes so far as to repudiate any such claim. *See id.* at 10 ("Count II does not seek a determination of the Individual Defendants' rights to indemnification.").[3] He asserts, instead, that Count II "seeks a judicial determination that the current and ongoing advancement of legal expenses, – *i.e.*, Legal Costs, as that term is defined in the Complaint (¶ 58) – is improper." *Id*. He continues: "Count II alleges the impropriety of such advances, irrespective of any alleged entitlement to indemnification." *Id*.

For their part, the defendants do not argue that a claim disputing the Individual Defendants' entitlement to *ongoing advancement* of legal costs would be unripe. *See* Reply at 2-6. Rather, they contend that the complaint fails to state such a claim and, in any event, Baldwin can muster no set of facts sufficient to do so. *See id*. The fate of their motion to dismiss hence hinges on whether the complaint states a claim for improper advancement of legal costs.

### B. Nature of Count II

The parties' dispute over the nature of Count II implicates the standards of Federal Rule of Civil Procedure 12(b)(6), pursuant to which a court inquires whether a complaint fails to state

---

[3] Baldwin's position is understandable. The defendants correctly observe that the Court of Chancery of Delaware has made plain that the question of entitlement to indemnification becomes ripe only "once the underlying proceeding is truly final[,]" which occurs upon "the final, non-appealable conclusion of a proceeding." *Sun-Times*, 954 A.2d at 397. The pendency of the parties' cross-appeals to the First Circuit renders any claim of wrongful indemnification unripe.

11

a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). As the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted)[4]; *see also, e.g., Cook v. Gates*, 528 F.3d 42, 48 (1st Cir. 2008) ("To survive a motion to dismiss, a complaint must allege a plausible entitlement to relief.") (citations and internal quotation marks omitted).

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id*. "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted); *see also, e.g., Arturet-Vélez v. R.J. Reynolds Tobacco Co.*, 429 F.3d 10, 13 n.2 (1st Cir. 2005) (in ruling on motion to dismiss pursuant to Rule 12(b)(6), "[t]he court can consider, for instance, facts subject to judicial notice,

---

[4] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 563.

implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss").

Pursuant to Delaware law, which the parties agree applies to the substance of the claim set forth in Count II, *see* Opposition at 9-19; Reply at 2-6, "[w]hile the rights to indemnification and advancement are correlative, they are still discrete and independent rights, with the latter having a much narrower scope[,]" *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509-10 (Del. 2005) (footnote omitted).

With respect to advancements, Delaware General Corporation Law provides, in relevant part:

> (e) Expenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section. Such expenses (including attorneys' fees) incurred by former directors and officers or other employees and agents may be so paid upon such terms and conditions, if any, as the corporation deems appropriate.
>
> (f) The indemnification and advancement of expenses provided by, or granted pursuant to, the other subsections of this section shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office.
>
> \*\*\*
>
> (k) The Court of Chancery is hereby vested with exclusive jurisdiction to hear and determine all actions for advancement of expenses or indemnification brought under this section or under any bylaw, agreement, vote of stockholders or disinterested directors, or otherwise. The Court of Chancery may summarily determine a corporation's obligation to advance expenses (including attorneys' fees).

Del. Code Ann. tit. 8, § 145.

"An advancement action is a summary proceeding." *Kaung*, 884 A.2d at 509 (footnote omitted). "[T]he scope of an advancement proceeding under Section 145(k) of the DGCL [Delaware General Corporation Law] is limited to determining the issue of entitlement according to the corporation's advancement provisions and not to issues regarding the movant's alleged conduct in the underlying litigation." *Id*. (footnote and internal quotation marks omitted). "[T]he narrow scope of an advancement proceeding prohibits an ultimate determination of indemnification and liability owed by a corporate official for sums already advanced." *Id*. (footnote omitted).

In his opposing brief, Baldwin explains his claim regarding the impropriety of advancement of legal costs as follows:

1. While section 145(e) appears to authorize the advance of defense costs merely upon the receipt of a repayment undertaking by a director, Delaware caselaw makes clear that an undertaking is a necessary, but not a sufficient, condition. *See* Opposition at 13.

2. In the absence of a corporate bylaw or article providing for mandatory advancement, directors' decisions to advance defense costs are subject to the same rules of decision-making and implicate the same fiduciary duties as other decisions that directors must make. *See id*. at 13-14.

3. Because, in this case, the same individuals who comprise the board of directors and a majority of WMI's shareholders made the decision to advance defense costs to themselves, and no disinterested person participated in or ratified their vote, they are not entitled to the protections of the so-called "business judgment rule" and instead must demonstrate the "entire fairness" of their decision to advance themselves legal costs. *See id*. at 14-15.

4. As set forth in *Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82 (Del. Ch. 1992), "entire fairness" in the context of a decision to advance defense costs requires consideration of (i) whether the repayment undertakings proffered by directors are sufficient in the circumstances to protect the corporation's interest in repayment, and (ii) whether advancement of expenses ultimately, on balance, would be likely to promote the corporation's interests. *See id*. at 15-16. Under the first element of the *Advanced Mining* test, the board should weigh the potential magnitude of legal defense expenses and the directors' ability to repay the funds ultimately advanced, including the potential need for provision of security for the undertaking to repay. *See id*. at 16.

5. "[A]s the Complaint alleges, it appears that the Individual Defendants, as the Board of Directors of WMI[,] failed to give any consideration whatsoever to either of these two tests. The only reasonable inference that can be drawn from the allegations of the Complaint is that the Individual Directors helped themselves to the corporate treasury with no thought given to, and no analysis undertaken of, the factors required to be considered under *Advanced Mining*. This is director self-dealing at its worst." *Id*. at 17.

6. "In sum, both the statutory mechanism of § 145 as well as relevant case law permit the Court to rule at this time whether past and ongoing advancement of Legal Costs is proper, and whether or not the Individual Directors breached their fiduciary duties by compelling WMI to advance such Legal Costs without having given any consideration to the factors which Delaware law requires that directors consider when faced with a request for advance[ment] of defense costs." *Id*.

Nonetheless, the defendants correctly observe that "[w]hat Mr. Baldwin may have meant to say, and what his Complaint actually alleges, are two very different things." Reply at 3. After

15

carefully scrutinizing the complaint, and bearing in mind that all reasonable inferences are to be drawn in Baldwin's favor, I reach the conclusion that the only claim fairly stated in Count II is one of lack of entitlement to indemnification on account of the rendering by this court of a final judgment in Baldwin's favor with respect to the Additional Guaranty Shares. Tellingly, as the defendants suggest, *see* Reply at 1, Baldwin's argument in his opposing brief that he sets forth a claim of improper advancement of legal costs *instead of*, and not in addition to, a claim of improper indemnification, *see* Opposition at 10, has the earmarks of an afterthought, asserted in an attempt to avoid dismissal on ripeness grounds.

The complaint *does* seek an injunction against future advancement of legal costs, and certain of its factual allegations are relevant to a claim of improper advancement of such costs; for example, that the Individual Defendants, as the entirety of the board of directors of WMI, caused advancement of those costs to themselves and that the legal costs are substantial and material with respect to each of the Individual Defendants' financial circumstances.

But, the complaint omits mention of (i) whether any provision of WMI's bylaws or articles provided for advancement of legal defense costs, (ii) how the decision to advance defense costs in this case failed to comport with those provisions, or (iii) that the Individual Defendants purportedly failed to consider the two factors relevant to demonstrating entire fairness in a decision to advance defense costs.

As it happens, the only document incorporated within and/or annexed to the complaint that touches on the process that WMI used in deciding whether to advance the legal costs is WMI's counsel's letter of April 18, 2007, in which he asserts that (i) the vote in question was taken by shareholders, rather than the board of directors, and thus sufficed to grant advancement of defense costs pursuant to WMI's certificate of incorporation and bylaws, and (ii) the

shareholders determined that advancement of defense costs was appropriate in the circumstances. *See* Exh. C to Complaint.

While the complaint does allege that the Individual Defendants breached their fiduciary duties, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555. The allegations of the complaint do not suffice to raise a plausible claim of entitlement to relief on a claim of improper advancement of legal costs.[5]

Because Count II fairly can be construed only to state a claim for improper indemnification of the Individual Defendants, which Baldwin has disclaimed at this time and, in any event, does not contest would be unripe, Count II must be dismissed.[6]

### C. Whether Count I Forestalls Dismissal

One question remains: whether the dismissal of Count II necessitates the dismissal of Count I, in which Baldwin complains of the improper denial of his request to inspect WMI's books and records.

The complaint invokes the court's diversity jurisdiction, *see* Complaint ¶ 9, which requires, *inter alia*, the existence of a matter in controversy exceeding the sum or value of $75,000, *see, e.g.*, 28 U.S.C. § 1332(a)(1). Baldwin seeks no money damages via the claims in Count I, which arise under a Delaware statute contemplating relief in the form of an order compelling inspection. *See* Complaint ¶¶ 53-56; Del. Code Ann. tit. 8, § 220(c) ("the stockholder may apply to the Court of Chancery for an order to compel such inspection").

---

[5] Assuming *arguendo* that WMI's Certificate of Incorporation, which Baldwin attaches to his opposing brief, *see* Exh. A to Opposition, is cognizable for purposes of assessing whether the complaint states a claim for improper advancement of legal costs, it does not help Baldwin. The complaint still contains no allegation that the shareholder vote to approve advancement of defense costs failed to comport with WMI's Article 10, which addresses the subject, or that the Individual Defendants failed to take into account allegedly requisite elements in taking that vote.

[6] I need not and do not consider whether, as the defendants alternatively argue, *see* Reply at 3-6, Baldwin has no good-faith basis to allege facts supporting a claim of improper advancement of defense costs.

Baldwin argues that dismissal of Count II does not necessitate dismissal of Count I because:

1. The relevant time for determining the amount in controversy is the moment of filing, and subsequent events, such as the partial grant of a motion to dismiss, do not divest the court of jurisdiction. *See* Opposition at 20 (citing, *inter alia*, *Spielman v. Genzyme Corp.*, 251 F.3d 1, 6 (1st Cir. 2001)).

2. In actions for declaratory or equitable relief in which no money damages are sought, such as Count I, the amount in controversy is measured by the value of the object of the litigation, and the books and records in question were sought with respect to the alleged improper advancement of legal costs in an amount exceeding $75,000. *See id.* at 20-21 (citing *Wilbert v. Unum Life Ins. Co.*, 981 F. Supp. 61, 64 (D.R.I. 1997)).

As the defendants point out, *see* Reply at 6, dismissal of one claim requires dismissal of other claims "if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed[,]" *Spielman*, 251 F.3d at 5 (citation and internal quotation marks omitted). That is so with respect to Count II. Baldwin's claim of wrongful indemnification, which was unripe at the moment of filing of the complaint, cannot save Count I from dismissal. *See, e.g., American Econ. Ins. Co. v. T.J. Copy Prods., Inc.*, No. 04 C 107, 2004 WL 842510, at *1 (N.D. Ill. Apr. 20, 2004) (premature indemnification claim could not count toward amount in controversy because it was not ripe, and might never be ripe, for adjudication).

Nor does Baldwin's invocation of the principles set forth in *Wilbert* spare Count I from dismissal. The court in *Wilbert* held: "In actions for declaratory relief where no money damages are sought, as in this case, the amount in controversy is measured by the value of the object of the litigation, which is the value of the right to be protected or the extent of the injury to be

prevented." *Wilbert*, 981 F. Supp. at 64 (citation and internal quotation marks omitted). The *Wilbert* court went on: "A clear majority of courts have adopted the view that where the controversy relates to the validity of [an insurance] policy and not merely to the liability for the benefits accrued, the amount involved is necessarily the face of the policy." *Id*. (citations and internal quotation marks omitted).

In this case, by contrast, the object of Count I is to gain access to the wrongfully withheld books and records, an outcome that in itself would have no discernible monetary value. *See* Complaint ¶¶ 53-56. While Baldwin may have desired those books and records for the purpose of bolstering his claim of wrongful indemnification, recoupment of either money or documents with intrinsic monetary value cannot be said to be the "object" of the books and records claim.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendants' motion to dismiss be **GRANTED**.

### NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 4th day of June, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge