*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

*ALEXANDER G. BALDWIN,* )
)
*Plaintiff* )
)
*v.* )  *Civil No. 08-431-P-H*
)
*JOHN W. BADER, et al.,* )
)
*Defendants* )

*RECOMMENDED DECISION ON DEFENDANTS'*
*MOTION FOR PARTIAL SUMMARY JUDGMENT*
*AND PARTIAL DISMISSAL OF COMPLAINT*

Defendants John W. Bader, Steven P. Boulet, Michael L. Brousseau, Scott F. Hall, Roger H. Poulin, John A. Powell (collectively, "Individual Defendants"), and WahlcoMetroflex, Inc. ("WMI") move pursuant to Federal Rule of Civil Procedure 56(c) for summary judgment as to Count II of plaintiff Alexander G. Baldwin's two-count complaint against them and pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Count I for lack of subject-matter jurisdiction.  *See* Defendants' Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint and for Dismissal of Count I of Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction ("Defendants' Motion") (Docket No. 35) at 1.[1]

---

[1] At the time of the filing of the Defendants' Motion, Count II of the then-operative complaint challenged only the decision to advance to the defendants the costs of defense of a prior suit, *Baldwin v. Bader, et al.*, Civil No. 07-46-P-H (D. Me.) ("*Baldwin I*").  *See* Verified Amended Complaint and Demand for Jury Trial (Docket No. 27) ¶¶ 57-66. Subsequently, I permitted the plaintiff an opportunity to amend his complaint to add a newly-ripe claim bearing on the decision to indemnify the defendants with respect to *Baldwin I*.  *See* Report of Conference of Counsel and Order (Docket No. 46).  I also permitted the defendants an opportunity to modify, supplement, or withdraw their dispositive motion in response to any such amendment of the complaint.  *See id.*  The plaintiff availed himself of the opportunity to amend Count II to add a claim targeting indemnification, in addition to advancement of defense costs. *See* Verified Second Amended Complaint and Demand for Jury Trial ("Second Amended Complaint") (Docket No. 47) ¶¶ 56-68.  However, the defendants made no change in their pending dispositive motion.  *See* ECF Docket. Accordingly, the defendants seek summary judgment only as to that portion of Count II of the now-operative complaint bearing on the allegedly improper decision to advance costs of defending *Baldwin I*.

The plaintiff opposes the motion on its merits and, alternatively, seeks deferral of its adjudication to permit additional discovery pursuant to Federal Rule of Civil Procedure 56(f). *See* Opposition to Defendants' Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint and for Dismissal of Count I of Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction and Request Pursuant to Fed.R.Civ.P. 56(f) for Additional Discovery ("Plaintiff's Opposition/Rule 56(f) Motion") (Docket No. 42) at 1, 12.

For the reasons that follow, I recommend that the court deny the defendants' motion for summary judgment as to Count II and dismissal of Count I.  I do not reach the plaintiff's Rule 56(f) motion, which, if the court agrees with the foregoing disposition, will be moot.

## I.  Motion for Summary Judgment as to Count II

### A.  Applicable Legal Standards

#### 1.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)).  "A fact is material if it has the potential of determining the outcome of the litigation."  *Id*. (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In determining whether this burden is met, the court must view the record in the light most

favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor.  *Santoni,* 369 F.3d at 598.  Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue."  *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e).  "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party."  *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## 2.  Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.  *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered

3

paragraphs" of the nonmovant's statement.   *See* Loc. R. 56(d).   Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.   "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(f).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008).

## B.  Factual Background

The parties' statements of material facts, credited to the extent either admitted or supported by record citations in accordance with Local Rule 56, with disputes in cognizable facts resolved in favor of the plaintiff as nonmovant, reveal the following relevant facts.

WMI is a Delaware corporation with its place of business in Lewiston, Maine.  Defendants' Statement of Material Facts ("Defendants' SMF") (Docket No. 36) ¶ 1; Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Opposing SMF") (Docket No. 42-1) ¶ 1.  The Individual Defendants and the plaintiff are WMI's sole shareholders.  *Id*. ¶ 2.  The Individual Defendants, at all relevant times, were also WMI's directors.  *Id*. ¶ 3.  Article 10 of WMI's articles of incorporation provides, in pertinent part:

> To the fullest extent permitted by applicable law, this Corporation is also authorized to provide indemnification of (and advancement of expenses to) such agents (and any other persons to which Delaware law permits this Corporation to provide indemnification) through Bylaws provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise, in excess of the indemnification and advancement otherwise permitted by Section

145 of the General Corporation Law of the State of Delaware, subject only to limits created by applicable Delaware law (statutory or non-statutory), with respect to actions for breach of duty to this Corporation, its stockholders, and others.

*Id*. ¶ 4.

WMI's bylaws in effect at all pertinent times read, in relevant part:

6.7    <u>Transactions with Interested Parties</u>.   No contract or transaction between the corporation and one or more of the directors or officers, or between the corporation and any other corporation, partnership, association, or other organization in which one or more of the directors or officers are directors or officers, or have a financial interest, shall be void or voidable solely for this reason, or solely because the director or officer is present at or participates in the meeting of the Board of Directors or a committee of the Board of Directors at which the contract or transaction is authorized or solely because his or their votes are counted for such purpose, if:

(a)    The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Directors or committee, and the Board or committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, even though the disinterested directors be less than a quorum;

(b)    The material facts as to his relationship or interest and as to the contract or transaction are disclosed or are known to the stockholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the stockholders; or

(c)    The contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified, by the Board of Directors, a committee of the Board of Directors, or the stockholders.

Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or of a committee which authorizes the contract or transaction.

Plaintiff's Additional Statement of Undisputed Material Facts ("Plaintiff's Additional SMF"), commencing on page 8 of Plaintiff's Opposing SMF, ¶ E; Bylaws of WEP Acquisition, Inc. ("Bylaws") (Docket No. 42-4), Exh. C thereto.

On April 11, 2007, the plaintiff's counsel sent a letter to the defendants' counsel ("April 11 Letter") in which he demanded that WMI provide the plaintiff with assurances that it would neither indemnify the Individual Defendants nor advance defense costs to them.  Defendants' SMF ¶ 5; Plaintiff's Opposing SMF ¶ 5.  The April 11 Letter further stated that the plaintiff would add a shareholder derivative claim to his complaint in *Baldwin I* to remedy any improper corporate indemnification or advancement to the Individual Defendants.  *Id*. ¶ 6.[2]  The very next day, April 12, 2007, WMI held its duly-called annual shareholder meeting, at which each of the Individual Defendants was present.  *Id*. ¶ 7.  The plaintiff received notice of the meeting, but did not attend.  *Id*. ¶ 8.

The notice of the April 12, 2007, shareholders' meeting contains no information suggesting that one of the items on the agenda was whether or not WMI should indemnify the Individual Defendants for any verdict rendered against them in *Baldwin I* or advance costs to them for the defense of the same.  Plaintiff's Additional SMF ¶ A; [Notice] (Docket No. 42-2), Exh. A thereto.  The notice describes as items to be discussed or acted upon at the meeting (i) the financial condition and operations of the corporation, (ii) the election of directors, and (iii) other business that may properly be brought before the shareholders of the corporation.  Plaintiff's Additional SMF ¶ B; Notice.

The plaintiff was completely unaware that the issues of *Baldwin I* indemnity and defense costs were going to be addressed at the shareholders' meeting or that counsel would be providing advice on the same.  Plaintiff's Additional SMF ¶ C; Affidavit of Alexander G. Baldwin in Support of His (1) Opposition to Defendants' Motion for Partial Summary Judgment on Count II of Plaintiff's Amended Complaint and for Dismissal of Count I of Plaintiff's Amended

---

[2] I have removed the defendants' characterization of the April 11 Letter as having made threats, *see* Defendants' SMF ¶ 6, which the plaintiff denies, *see* Plaintiff's Opposing SMF ¶ 6.

Complaint for Lack of Subject Matter Jurisdiction and (2) Related Rule 56(f) Motion ("Baldwin Aff.") (Docket No. 42-3), Exh. B thereto, ¶ 2.

During the April 12 shareholders' meeting, the Individual Defendants, in their capacities as WMI shareholders, discussed the *Baldwin I* lawsuit and the April 11 Letter.  Defendants' SMF ¶ 9; Affidavit of John W. Bader in Support of Defendants' Motion for Summary Judgment (Docket No. 36-8) ¶ 5; Affidavit of Steven P. Boulet in Support of Defendants' Motion for Summary Judgment (Docket No. 36-10) ¶ 5; Affidavit of Michael L. Brousseau in Support of Defendants' Motion for Summary Judgment (Docket No. 36-12) ¶ 5; Affidavit of Scott F. Hall in Support of Defendants' Motion for Summary Judgment (Docket No. 36-14) ¶ 5; Affidavit of Roger H. Poulin in Support of Defendants' Motion for Summary Judgment (Docket No. 36-16) ¶ 5; Affidavit of John A. Powell in Support of Defendants' Motion for Summary Judgment (Docket No. 36-18) ¶ 5 (collectively, "Individual Defendants' Affs.").[3]  After a discussion with WMI's outside counsel, Wayne Tumlin, of (i) the applicable facts and circumstances related to the *Baldwin I* lawsuit, (ii) pertinent provisions of Delaware law, and (iii) the terms of WMI's articles of incorporation, the meeting was temporarily adjourned until April 13, 2007.  Defendants' SMF ¶ 10; Individual Defendants' Affs. ¶ 6.

On April 13, 2007, the Individual Defendants met with their litigation counsel, Paul McDonald, to discuss the *Baldwin I* litigation, including the claims and defenses, the potential damages and other remedies, and the expected fees and costs associated with defending against the plaintiff's claims.  Defendants' SMF ¶ 11; Individual Defendants' Affs. ¶ 7.  The WMI

---

[3] The plaintiff asserts that he is unable to admit or deny this statement, and several others, in the absence of further discovery, which he moves pursuant to Rule 56(f) to be permitted to undertake.  *See* Plaintiff's Opposing SMF ¶¶ 9-12, 14, 18.  As discussed below, the statements in question are not outcome-determinative as the defendants fall short of demonstrating their entitlement to summary judgment even taking them into account.  Accordingly, for purposes of the instant motion, I have taken them into consideration to the extent supported by the citations given.

shareholder meeting was reconvened later that afternoon, and the Individual Defendants continued to discuss the provisions of WMI's Articles of Incorporation and Delaware law applicable to corporate indemnification and advancement of defense costs.  Defendants' SMF ¶ 12; Individual Defendants' Affs. ¶¶ 8-9.  The plaintiff was not present at this meeting. Defendants' SMF ¶ 13; Plaintiff's Opposing SMF ¶ 13.

After careful consideration of the statutory and corporate requirements for indemnification and advancement of defense costs of *Baldwin I*; with full knowledge of the claims, defenses, potential damages, and other remedies and the expected litigation expenses of *Baldwin I*, as well as the financial positions of each of the directors and their ability to repay any advancement of defense costs; and having reached the conclusion that indemnification and advancement of funds would promote and protect WMI's interests by preventing disruption in the management and operation of the company, the Individual Defendants, in their capacity as WMI shareholders, determined that it was appropriate for WMI to indemnify them and to advance their defense costs, and voted unanimously, as WMI's shareholders, to authorize advancement of those costs.  Defendants' SMF ¶ 14; Individual Defendants' Affs. ¶¶ 4-9.

On April 18, 2007, WMI's counsel responded in writing (the "April 18 Letter") to the April 11 Letter.  Defendants' SMF ¶ 15; Plaintiff's Opposing SMF ¶ 15.  The April 18 Letter explained that the Individual Defendants had agreed to retain independent Delaware counsel and to refrain from using WMI funds for their defense in *Baldwin I* until the earlier of (i) the issuance of a legal opinion by independent counsel; (ii) the Individual Defendants providing WMI with undertakings; or (iii) the defendants' ultimate success in their defense against the plaintiff's claims.  *Id.* ¶ 17.

Thereafter, with full knowledge of (i) the potential damages and defense costs that could be incurred in *Baldwin I* and (ii) each other's assets and ability to repay any defense costs that were advanced by WMI, each Individual Defendant voluntarily provided WMI with a signed, written undertaking to repay any litigation advances in the event that it was ultimately determined that he was not entitled to indemnification.   Defendants' SMF ¶ 18; Individual Defendants' Affs. ¶¶ 4-10 & Exh. 1 thereto.

None of the information assertedly disclosed to and among the Individual Defendants at the April 12-13 shareholder meeting related to *Baldwin I*, and the decision to indemnify the Individual Defendants for any judgment in the same and to advance them defense costs, was ever provided to the plaintiff, except that he learned after the shareholder meeting that there had been a vote on those indemnity and advancement issues taken after receiving advice from counsel. Plaintiff's Additional SMF ¶ D; Baldwin Aff. ¶ 3.

## C.  Discussion

In Count II of his complaint, the plaintiff alleges, in relevant part:

> In acting as shareholders on April 13, 2007 to indemnify themselves, and to advance to themselves Defense Costs, the Individual Defendants failed properly to exercise their fiduciary duties to WMI and to Baldwin, in that, without limitation, they failed to consider (a) the expected amount of Defense Costs that would be advanced; (b) whether the undertakings by them to repay such advances were sufficient in the circumstances to protect WMI's interests in and to assure repayment of those Defense Costs; or (b) whether, ultimately, indemnity for liability, and advancement of Defense[] Costs, would on balance be likely to promote WMI's interests.

Second Amended Complaint ¶ 61.  He adds that the Individual Defendants breached their fiduciary duties to WMI and him by, *inter alia*, failing to consider these factors, as well as other material factors, before voting to advance themselves defense costs, and by improperly manipulating WMI's corporate machinery for their own personal gain.  *See id.* ¶¶ 62-63.

9

### 1.  Overview: Delaware Law on Advancement of Defense Costs

Section 145 of Delaware's General Corporation Law ("DGCL") addresses the subjects of indemnification of, and advancement of defenses costs to, corporate directors, officers, employees, and agents.  It provides, in relevant part:

> (e)  Expenses (including attorneys' fees) incurred by an officer or director in defending any civil, criminal, administrative or investigative action, suit or proceeding may be paid by the corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the corporation as authorized in this section.  Such expenses (including attorneys' fees) incurred by former directors and officers or other employees and agents may be so paid upon such terms and conditions, if any, as the corporation deems appropriate.
>
> (f)  The indemnification and advancement of expenses provided by, or granted pursuant to, the other subsections of this section shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding office. . . .

Del. Code Ann. tit. 8, § 145.

Article 10 of WMI's articles of incorporation provides, in relevant part, for advancement of defense costs to directors, to the fullest extent permitted by applicable law, "through Bylaws provisions, agreements with such agents or other persons, vote of stockholders or disinterested directors or otherwise[.]"  Defendants' SMF ¶ 4; Plaintiff's Opposing SMF ¶ 4.

A corporation can choose to mandate advancement of defense costs to directors and officers or, as in the case of WMI, to make case-by-case advancement decisions.  *See, e.g., Advanced Mining Sys., Inc. v. Fricke*, 623 A.2d 82, 84 (Del. Ch. 1992).  If the corporation mandates the advancement of defenses costs, that is the end of the matter: directors and officers are entitled to such advancements.  *See, e.g., Pearson v. Exide Corp.*, 157 F. Supp.2d 429, 437 (E.D. Pa. 2001) ("Delaware courts have consistently found that a corporation may bind itself in

advance, through its bylaws or by contract, to advance the costs of litigation incurred by present or former directors or officers.") (applying Delaware law); *Gentile v. SinglePoint Fin., Inc*., 787 A.2d 102, 106 (Del. Ch.), *aff'd*, 788 A.2d 111 (Del. 2001) ("Where such a mandatory provision exists, the rights of potential recipients of such advancements will be enforced as a contract.") (footnote omitted).  If, however, advancement of defense costs is permissive, "[s]ection 145(e) leaves to the business judgment of the board the task of determining whether the undertaking proffered[,] in all of the circumstances, is sufficient to protect the corporation's interest in repayment and whether, ultimately, advancement of expenses would on balance be likely to promote the corporation's interests." *Advanced Mining*, 623 A.2d at 84.

"The business judgment rule is an acknowledgement of the managerial prerogatives of Delaware directors[.]"  *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  "It is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id*.  "Absent an abuse of discretion, that judgment will be respected by the courts." *Id*.  "The burden is on the party challenging the decision to establish facts rebutting the presumption." *Id*.  "To rebut the rule, a shareholder plaintiff assumes the burden of providing evidence that directors, in reaching their challenged decision, breached any one of the *triads* of their fiduciary duty – good faith, loyalty or due care." *Cede & Co. v. Technicolor, Inc*., 634 A.2d 345, 361 (Del. 1993), *modified on other grounds*, 636 A.2d 956 (Del. 1994) (emphasis in original).

The business judgment rule is rebutted when, *inter alia*, directors are shown to have engaged in an interested transaction, calling into question whether they breached their duty of loyalty.  *See, e.g., In re Digex, Inc. S'holders Litig*., 789 A.2d 1176, 1206 (Del. Ch. 2000)

("When the directors of a Delaware corporation appear on both sides of a transaction, the presumption in favor of the business judgment rule is rebutted and the directors are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain.") (footnote and internal quotation marks omitted).

"Essentially, the duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede*, 634 A.2d at 361. "Classic examples of director self-interest in a business transaction involve either a director appearing on both sides of a transaction or a director receiving a personal benefit from a transaction not received by the shareholders generally." *Id.* at 362.

Directors found to have engaged in such an interested transaction must prove its "entire fairness" unless it fits within the confines of certain safe harbors delineated in section 144 of the DGCL. *See, e.g., Kosseff v. Ciocia*, No. Civ.A. 188-N, 2006 WL 2337593, at *6 (Del. Ch. Aug. 3, 2006) ("[W]here (as here) a shareholder challenges board approval of a transaction between the corporation and a director, because of the interested nature of the transaction, the transaction will only stand where the transaction is shown to be intrinsically fair to the shareholders; or if the transaction is entitled to the 'safe harbor' provisions of 8 Del. C. § 144(a)."); *see also* Del. Code Ann. tit. 8, § 144 (contract or transaction between a corporation and one or more of its directors or officers is not void or voidable solely for that reason if (i) material facts as to director's or officer's relationship or interest and as to the contract or transaction are disclosed or known to the board or a committee thereof, and the board or committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, (ii) such material facts are disclosed or known to the shareholders entitled to vote thereon, and

the contract or transaction is specifically approved in good faith by vote of the shareholders, or (iii) the contract or transaction is fair to the corporation as of the time it is authorized, approved, or ratified by the board, a committee, or the shareholders).

In the context of decisions to advance defense costs to directors, as in other contexts, the business judgment rule can be rebutted, obliging directors to meet the more stringent test of proving the entire fairness of the transaction.  *See, e.g., In re Adelphia Commc'ns Corp.*, 323 B.R. 345, 385 (Bankr. S.D.N.Y. 2005) ("Where directors are voting on advancement [of defense costs] to themselves, such a vote is a classic self-dealing transaction, and must satisfy the requirements of the 'entire fairness' doctrine.") (footnote omitted) (applying Delaware, as well as Pennsylvania, law); *Havens v. Attar*, No. CIV.A. 15134, 1997 WL 695579, at *2 (Del. Ch. Nov. 5, 1997) (preliminarily determining that the plaintiffs would be able to rebut application of the business judgment rule to directors' decision to advance defense costs).

"[T]he 'entire fairness' doctrine has dual components – one procedural and one substantive." *Adelphia*, 323 B.R. at 385-86.  "As a procedural matter, the court must consider whether the board made the necessary investigation and undertook due deliberation with respect to the decision the board made." *Id.* at 386.  "As a substantive matter, the court must consider whether the decision is defensible on the merits." *Id.*  "Where, as here, the transaction has not been approved by disinterested directors, the ultimate determination of reasonableness must be made by the court." *Id.* (footnote omitted).

The relevant factors, for purposes of an entire-fairness analysis of a decision to advance defense costs, are those articulated in *Advanced Mining*: "whether the undertaking proffered[,] in all of the circumstances, is sufficient to protect the corporation's interest in repayment and whether, ultimately, advancement of expenses would on balance be likely to promote the

13

corporation's interests." *Advanced Mining*, 623 A.2d at 84. *See also Adelphia*, 323 B.R. at 387 ("As a procedural matter, in the context of a discretionary advance of defenses costs to themselves as officers or directors of the Managed Entities, directors have the duty to consider (1) the potential damages to be paid in the event that the directors are found not to ultimately be entitled to indemnification, (2) an estimate of attorneys' fees, and (3) the assets of each director to determine whether the directors could pay potential damages and repay litigation expenses. Where advancement is not mandatory, directors also have the duty to evaluate the *corporation's interest* with respect to advancement of expenses[.]") (footnotes and internal quotation marks omitted) (emphasis in original).

## 2. The Parties' Contentions

The defendants seek summary judgment as to Count II on two bases:

1.      Assuming *arguendo*, as the complaint presupposes, that the decision to advance defense costs was subject to the so-called "*Advanced Mining* test," the undisputed material facts demonstrate that the decision was made in conformance therewith. *See* Defendants' Motion at 9-13.

2.      The *Advanced Mining* test, which pertains to decisions of boards of directors to advance defense costs, did not apply to the vote in question, which was taken by WMI's shareholders. *See id*. at 13-15. The shareholders permissibly voted to advance defense costs to the Individual Defendants in conformance with sections 145(e) and (f) of the DGCL and Article 10 of WMI's articles of incorporation. *See id*. No more was required, and no greater scrutiny is warranted. *See id*.

The plaintiff rejoins that:

1.      It is axiomatic that when directors or controlling shareholders of a corporation stand to obtain a personal benefit from corporate action, they engage in a self-dealing transaction that is to be judged by the entire fairness rule rather than the more lax business judgment rule. *See* Plaintiff's Opposition/Rule 56(f) Motion at 3.  The Individual Defendants, who were all of the directors of WMI and its controlling shareholders, stood on both sides of the transaction when considering corporate action designed to benefit only themselves in the form of advancement of their personal legal fees and expenses.  *See id*. at 5.  Their conclusory assertions on summary judgment do not demonstrate the requisites of entire fairness.  *See id*. at 5-6.

2.      The defendants are mistaken that the shareholder vote in itself properly authorized the advancement of defense costs.  *See id*. at 6-7.  They overlook section 6.7 of WMI's bylaws, which mirrors section 144 of the DGCL in providing safe harbors for corporate self-dealing. *See id*. at 6-12.  The defendants do not demonstrate that they meet any of those safe harbors.  *See id*.

3.      If the court disagrees that the motion for partial summary judgment should be denied on the above grounds, its decision should in fairness be deferred to permit further discovery pursuant to Rule 56(f).  *See id*. at 12-19.

### 3. Applicability of the *Advanced Mining* and Entire-Fairness Tests

I consider, first, whether the Individual Defendants' vote to advance defense costs to themselves, taken in their capacity as shareholders, is subject to the *Advanced Mining* and related tests (entire fairness, section 144 of the DGCL, and section 6.7 of WMI's bylaws, which parrots section 144).

The defendants' argument against application of those tests is not without force.  Factors cutting in their favor include the following.

15

1.    The Individual Defendants cannot fairly be characterized as "controlling shareholders."   None of them individually owns more than 50 percent of WMI's stock or exercises control over the business and affairs of the corporation.  *See Dubroff v. Wren Holdings, LLC*, C.A. No. 3940-VCN, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2009).  And there is no evidence that they collectively form a control group by virtue of connection "in some legally significant way – e.g., by contract, common ownership, agreement, or other arrangement – to work together toward a shared goal."  *Id.* (footnote omitted).  While they may have had "parallel interests," that is "insufficient as a matter of law to support the inference that the shareholders were part of a control group."  *Id.* (footnote and internal quotation marks omitted).  Therefore, the Individual Defendants owed WMI and its shareholders no fiduciary duties by reason of their status as shareholders.  *See, e.g., id.*

2.    Sections 145(e) and (f) of the DGCL and Article 10 of WMI's articles of incorporation permit approval of the advancement of defense costs to directors by *shareholder vote alone*.  *See* Del. Code Ann. tit. 8, § 145; Defendants' SMF ¶ 4; Plaintiff's Opposing SMF ¶ 4.  While both section 145 and Article 10 require a vote of "disinterested" directors, neither requires a vote of "disinterested" shareholders.  *See id.*  In addition, section 145 and Article 10 impose only one substantive requirement: that individuals receiving advancements of defense costs provide an undertaking, which need not be secured, to repay the corporation in the event that they are found not to be entitled to indemnification.  *See id.*  The Individual Defendants complied with this requirement.

3.    The plaintiff does not cite, nor does my research disclose, any case in which a court has applied the *Advanced Mining* or entire-fairness tests to a *shareholder* decision to advance defense costs.  In *Advanced Mining* itself, the court presupposed that the decision to

16

advance defense costs would be made by the board.  *See Advanced Mining*, 623 A.2d at 84.  In other cases cited by the plaintiff, the decision to advance defense costs was in fact made by the board.  *See Adelphia*, 323 B.R. at 363-65, 387; *Attar*, 1997 WL 695579, at *2.

4.     As the defendants argue, the concepts that the plaintiff invokes – the business judgment rule, the rebuttal of that rule, and the application of "safe harbors" restoring that rule – logically apply to decisions taken by boards of directors, which manage corporations, rather than by shareholders, who own them and typically owe no fiduciary duties to them absent status as majority or controlling shareholders.  *See, e.g.*, *Aronson*, 473 A.2d at 811 ("A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation. . . .  The existence and exercise of this power carries with it certain fundamental fiduciary obligations to the corporation and its shareholders.") (footnote omitted); *Tanzer v. International Gen. Indus., Inc*., 379 A.2d 1121, 1124 (Del. 1977), *overruled on other grounds by Weinberger v. UOP, Inc*., 457 A.2d 701 (Del. 1983) ("At a stockholders' meeting, each stockholder represents himself and his own interests solely and in no sense acts as a trustee or representative of others, and his right to vote upon a measure coming before the meeting is not in any way affected by the fact that he has a personal interest therein different or separate from that of the other stockholders, or by the fact that he is related to interested persons.  He may vote contrary to what other stockholders deem to be the best interest of the corporation, or even detrimental to it.  *This is equally true of a stockholder who is also a director voting as a stockholder*.") (citation and internal quotation marks omitted) (emphasis added).

Nonetheless, and while the matter is not free from doubt, I conclude that the defendants' decision to advance defense costs to themselves fairly can be characterized as an "interested

17

transaction," implicating their duty of loyalty as directors, despite the fact that they voted to enter into that transaction in their capacity as shareholders.  This is so because:

1.     While "a stockholder in a Delaware corporation has a right to vote his shares in his own interest, including the expectation of personal profit," that right is "limited, of course, by any duty he owes other stockholders."  *Id.*

2.     Section 144 of the DGCL, which addresses the subject matter of interested transactions, does not on its face indicate that such transactions need have been entered into by directors *acting in their capacity as directors* to come within the purview of the statute.  *See* Del. Code Ann. tit. 8, § 144(a).

3.     An interested transaction is defined, for purposes of Delaware common law, as one in which "the defendants either (1) stood on both sides of the transaction and dictated its terms in a self-dealing way, or (2) received in the transaction a personal benefit that was not enjoyed by the shareholders generally."  *In re Coca-Cola Enters., Inc. S'holders Litig.*, 2007 WL 3122370, at *4 (Del. Ch. Oct. 17, 2007), *aff'd*, 954 A.2d 910 (Del. 2008) (footnote and internal quotation marks omitted); *see also Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1169 (Del. 1995) (self-dealing occurs "when a director deals directly with the corporation, or has a stake in or is an officer or director of a firm that deals with the corporation").  The transaction in question meets that definition.

4.     An interested transaction implicates the duty of loyalty.  *See, e.g., Venhill Ltd. P'ship ex rel. Stallkamp v. Hillman*, C.A. No. 1866-VCS, 2008 WL 2270488, at *22 (Del. Ch. June 3, 2008) ("[U]nder the traditional operation of the entire fairness standard, the self-dealing director would have breached his duty of loyalty if the transaction was unfair, regardless of whether he acted in subjective good faith.  After all, that is the central insight of the entire

18

fairness test, which is that when a fiduciary self-deals he might unfairly advantage himself even if he is subjectively attempting to avoid doing so.") (footnote omitted).  My research indicates that the Delaware Court of Chancery has broadly construed that duty, indicating that it attaches in *any* of a director's dealings with a corporation of which he or she is a director.  *See, e.g., Grace Bros., Ltd. v. Uniholding Corp.*, No. Civ.A. 17612, 2000 WL 982401, at *12-*13 (Del. Ch. July 12, 2000) (rejecting argument that complaint failed to state a claim against director-defendants for breach of loyalty when it targeted actions they took in their capacity as members of a wholly owned subsidiary's board of directors; reasoning, "[T]he [defendants] argue that a director of a parent board such as Zwirn has no duty to stop himself from injuring the parent while wearing his subsidiary hat.  The policy implications of accepting this premise are, to put it mildly, unappealing.  I decline to endorse an approach that so obviously invites abuse and that would gut the duty of loyalty owed by Delaware directors to their stockholders.") (footnote omitted); *Technicorp Int'l II, Inc. v. Johnston*, No. Civ.A. 15084, 2000 WL 713750, at *5 (Del. Ch. May 31, 2000) (describing as "axiomatic and subsumed within the director's broader duty of loyalty" the proposition that "a director *qua* director owes a duty to the corporation to so conduct himself in all of his capacities so as not to inflict an intentional, wrongful injury upon the corporation"; two directors therefore "had a duty as directors in any of their relationships" with corporation "not to injure that corporation or its assets") (footnote and internal quotation marks omitted); *Hoover Indus., Inc. v. Chase*, 1998 WL 73758, at *1-*2 (Del. Ch. July 13, 1988) (rejecting argument that director was not subject to service of process for allegedly wrongful acts accomplished in his capacity as an officer, in which capacity he owed no fiduciary duties to corporation; stating, "The duty of loyalty of a director is, in my opinion, a broad and

encompassing duty that, in appropriate circumstances, is capable of impressing a special obligation upon a director in any of his relationships with the corporation.").

Because the directors' decision, in their capacity as shareholders, to advance themselves defense costs constituted an interested transaction, they were obliged to demonstrate its entire fairness unless one of the safe harbors delineated in section 144 for board or shareholder action, mirrored in section 6.7 of WMI's bylaws, applied.  As the plaintiff suggests, *see* Plaintiff's Opposition/Rule 56(f) Motion at 8-9, the safe harbor of section 144(a)(1) is unavailable because there was no vote of the board of directors, and none of the directors was in any event disinterested, and the safe harbor of section 144(a)(2) is unavailable because the material facts of the transaction were not either disclosed to or known by the plaintiff, a shareholder entitled to vote thereon, *see* Del. Code Ann. tit. 8, § 144(a)(1)-(2).  The third and final safe harbor set forth in section 144 contemplates a showing of entire fairness.  *See id.* § 144(a)(3); *HMG/Courtland Props., Inc. v. Gray*, 749 A.2d 94, 114 (Del. Ch. 1999) ("[U]nder § 144(a)(3), a non-disclosing interested director can remove the taint of interestedness by proving the entire fairness of the challenged transaction") (citation and internal quotation marks omitted).[4]

Therefore, the defendants are entitled to summary judgment as to Count II only if they can demonstrate that there is no material dispute that the decision to advance defense costs of *Baldwin I* was entirely fair.

### 4.  Showing of Entire Fairness, Informed by *Advanced Mining* Test

The plaintiff argues, and I agree, that the defendants adduce insufficient evidence of the entire fairness of the transaction in question to warrant summary judgment in their favor as to

---

[4] The effect of meeting a safe harbor is not to immunize an interested transaction from judicial review but, rather, to restore application of the business judgment rule.  *See, e.g., Sutherland v. Sutherland*, No. 2399-VCL, 2009 WL 857468, at *4 n.13 (Del. Ch. Mar. 23, 2009), *clarified on other grounds*, 2009 WL 1177047 (Del. Ch. Apr. 22, 2009).

Count II.  *See* Plaintiff's Opposition/Rule 56(f) Motion at 11-12.  The defendants' evidence bears on the procedural fairness of the transaction.   The Individual Defendants aver that they considered (i) the claims, defenses, potential damages, and other remedies at stake in *Baldwin I*, (ii) the expected litigation expenses of *Baldwin I*, (iii) the financial position of each of the directors and their ability to repay any advancement of defense costs, and (iv) whether the advancement of funds would promote and protect WMI's interests by preventing disruption in the management and operation of the company.  *See* Defendants' SMF ¶¶ 14, 18.  However, they adduce no evidence illuminating the substance of the matters considered.  *See generally id*.  In the absence of such evidence, the court is unable to judge whether, "[a]s a substantive matter, . . . the decision is defensible on the merits."  *Adelphia*, 323 B.R. at 386.

Accordingly, I recommend that the court deny the defendants' motion for summary judgment as to Count II.[5]

## II.  Motion for Dismissal of Count I

The defendants' motion to dismiss Count I, which alleges that they wrongfully denied the plaintiff access to various WMI books and records, *see* Second Amended Complaint ¶¶ 52-55,  hinges on the success of their motion for summary judgment as to Count II, *see* Defendants' Motion at 15-18 (seeking dismissal of Count I for lack of subject matter jurisdiction on the ground that the plaintiff never was entitled, or had a reasonable basis to believe that he could be entitled, to recover damages in the jurisdictional amount for the claims set forth in Count II).  Because I have recommended that the court deny their motion for summary judgment as to Count II, I recommend that it deny their motion to dismiss Count I.

---

[5] I need not and do not reach the plaintiff's Rule 56(f) motion.  I also express no opinion as to whether, upon completion of ongoing discovery, the defendants will be able to demonstrate, or the plaintiff to cast doubt, that the decision to advance defense costs of *Baldwin I* meets the requisites of entire fairness.

### III.  Conclusion

For the foregoing reasons, I recommend that the defendants' motion for partial summary judgment as to Count II of the complaint and partial dismissal as to Count I be **DENIED.**  I do not reach the plaintiff's Rule 56(f) motion which, if the court agrees with the foregoing disposition, will be moot.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of March, 2010.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge